# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ARTHUR BAXTER,

    Petitioner,

v.                                                                       Civil Action No. 1:15cv211
                                                                       (Judge Keeley)

JENNIFER SAAD, Warden,

    Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On November 9, 2015, the *pro se* Petitioner, an inmate then-incarcerated at FCI Hazelton,[1] in Bruceton Mills, West Virginia, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241, seeking restoration of certain Good Time Credits lost in a disciplinary hearing; an award of prior custody credit; and the appointment of a "special master" to oversee the treatment of petitioner and all other "special needs" inmates at FCI Hazelton. Along with his petition, Petitioner filed a copy of his Prisoner Trust Account Report ("PTAR") with its attached Ledger Sheet. Because Petitioner had not filed an application to proceed as a pauper, the Clerk of Court issued a Notice of Deficiency. On November 25, 2015, Petitioner filed his motion to proceed as a pauper. By Order entered December 1, 2015, the motion was granted, and Petitioner was permitted to proceed as a pauper without being required to pay the $5.00 filing fee.

On December 1, 2015, the undersigned ordered the Respondent to show cause why the writ should not be granted. On January 12, 2016, Respondent filed a Motion to Dismiss or for Summary Judgment with a memorandum in support. By Order and Roseboro Notice issued

---

[1] Petitioner is presently incarcerated at FCI Estill, in Estill, South Carolina.

January 13, 2016, Petitioner was advised of his right to respond to the Respondent's dispositive motion. Petitioner filed his response on February 1, 2016. This matter is pending before the undersigned for a Report and Recommendation.

## II. Facts

### A. Conviction and Sentence[2]

On September 8, 1994, in the Northern District of West Virginia, Petitioner committed a bank robbery. ECF No. 15-1 at 2. Subsequently, on October 1, 1994, he was arrested for prosecution of various state offenses by state authorities in Baltimore, Maryland. Id. On November 9, 1994, he was sentenced in District Court for Baltimore County, in Case No. 4C00018827 to a one-year term of imprisonment with credit from October 2, 1994. Id.[3] On April 25, 1995, he was sentenced in the Circuit Court for Baltimore County in Case No. 95-CR-006, to a three-year term of confinement with credit from October 2, 1994. Id.[4] On May 19, 1995, pursuant to a federal writ, he was transferred into federal custody for prosecution of the bank robbery charge. ECF No. 15-1 at 10.

Baxter was convicted of bank robbery in violation of 18 U.S.C. § 2113(a) and (d) at trial in this Court on October 31, 1995. On May 22, 1996, based upon his prior convictions for rape and armed robbery, he was found to be a career offender and sentenced to a term of imprisonment of 300 months. He appealed his conviction to the United States Court of Appeals

---

[2] Information regarding Petitioner's underlying criminal cases can be found on PACER at N.D. W.Va. Criminal Case No. 2:95cr8.

[3] See also criminal record for District Court for Baltimore County Case No. 4C00018827, available at <http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=4C00018827&loc=32&detailLoc=DSCR>

[4] See also criminal record for Circuit Court for Baltimore County Case No. 95-CR-006, available at <http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=03K95000006&loc=55&detailLoc=K>

for the Fourth Circuit; by unpublished opinion issued May 1, 1997, the Fourth Circuit affirmed his conviction. Petitioner's Judgment of Conviction did not specify that his sentence was ordered to run concurrently with his undischarged state sentences. ECF No. 15-1 at 14 – 18. The federal writ having been satisfied, Petitioner was returned to the custody of Maryland State authorities on May 31, 1996. ECF No. 15-1 at 12.

Petitioner completed his state sentences and the State of Maryland released him to Mandatory Supervision into the exclusive custody of federal authorities on August 18, 1997. ECF No. 15-1 at 11 and 20. His federal sentence commenced on that date. ECF No. 15-1 at 7.

All of the time that Petitioner spent in the primary custody of the State of Maryland from October 2, 1994 – August 17, 1997 was credited against his Maryland State sentences. ECF No. 15-1 at 20. The Bureau of Prisons ("BOP") has updated Petitioner's sentence computation to include one day of jail credit for time spent in official detention on October 1, 1994, time that was not previously credited toward any other sentence. ECF No. 15-1 at 7. Accordingly, based on this calculation, Petitioner is projected to be released from BOP custody via Good Conduct Time release on October 22, 2019. Id.

On March 30, 1998, Petitioner filed a Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255. See Case No. 2:95cr8, ECF No. 67. By Order entered August 14, 2001, this Court denied the Motion. On July 14, 2006, Baxter filed a Notice of Appeal, seeking review of the August 14, 2001 Order. On October 26, 2006, the Fourth Circuit dismissed the appeal as untimely. See Case No. 2:95cr8, ECF No. 78.

On October 17, 2011, Petitioner filed a *Pro Se* Motion for Credits [sic] Time Served in this Court, seeking to be awarded prior custody credit against his federal sentence for time spent in Maryland State custody. See Case No. 2:95cr8, ECF No. 95. By Order entered October 27,

2011, the motion was denied, because Petitioner was not entitled to credit for time served in custody prior to the commencement of his federal sentence. ECF No. 15-1 at 25.

On July 11, 2013, in this Court, Petitioner filed a motion for leave to file a successive § 2255 petition. By Order entered September 12, 2013, the motion was denied.

**B. Federal Habeas**

**1) The Petition**

Petitioner alleges that

1) his Good Time Credits were unlawfully revoked incident to a disciplinary hearing;

2) the BOP denied him credit for one year spent in federal custody, pending trial, while he was serving a 3-year State of Maryland sentence; and

3) his access to the courts was denied when the BOP withheld his legal documents while he was in the Special Housing Unit ("SHU"), and the BOP staff permits "special needs" inmates like himself who have functioned as "snitches," or are homosexuals or child molesters, to be abused and discriminated against.

Petitioner appears to contend that he has exhausted his administrative remedies. ECF No. 1 at 7 – 8.

As relief, he seeks the restoration of his Good Conduct Time credits; a recalculation of his sentence to include all time spent in federal custody while he was serving his 3-year State sentence; and the appointment of a "special master" to oversee the treatment of "special needs" inmates like himself at FCI Hazelton. ECF No. 1 at 8.

**2) Warden's Response**

The Respondent argues that the petition should be dismissed or summary judgment granted in its favor because:

1) Petitioner is not entitled to any further credit against his federal sentence because he has already been awarded all prior custody credit to which he is entitled;

4

2) Petitioner received all due process at his Disciplinary Hearing and there is some evidence to find that he committed the prohibited act; and

3) Petitioner cannot proceed on his "cruel and unusual" conditions of confinements claims because they are not cognizable in a § 2241 action, and further, he has not exhausted his administrative remedies regarding them.

**3) Petitioner's Response to Warden's Dispositive Motion**

Petitioner reiterates the arguments previously made in his petition on his first two claims, and attempts to refute the Warden's on the same. Regarding his third claim regarding the "cruel and unusual" conditions of confinement, he "withdraw[s] the third ground respectfully." ECF No. 18 at 6.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing SA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff s well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin. 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears

5

beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the

movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

### IV. Analysis

**A. Prior Custody Credit**

Prior to the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2244 authorized dismissal of a successive habeas petition that presented "no new grounds not heretofore presented and determined." McClesky v. Zant, 499 U.S. 467, 483 (1991). As amended by AEDPA, § 2244(a) now provides:

> No circuit or district judge shall be required to entertain an application for writ of
> habeas corpus to inquire into the detention of a person pursuant to a judgment of a

7

court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for writ of habeas corpus, except as governed in section 2255.

A few circuit and district courts have held that § 2244(a) bars a subsequent § 2241 as a successive petition where the grounds raised in the subsequent petition were denied in a prior § 2241 action. See Valona v. United States, 138 F.3d 693, 695 (7th Cir. 1998); Chambers v. United States, 106 F.3d 472, 475 (2nd Cir. 1997); Byrd v. Gillis, No. CIV.A. 97-4697, 1997 WL 698157, at *1 (E.D. Pa. Nov. 5, 1997). For a petition to be barred as successive under this provision, the same claims must have been raised and adjudicated on the merits in the petitioner's prior habeas proceedings. Kuhlmann v. Wilson, 477 U.S. 436, 444 n.6 (1986) (plurality opinion). Under the abuse-of-the-writ doctrine, a court may dismiss a subsequent petition when "a prisoner files a petition raising grounds that were available but not relied upon in a prior petition, or engages in other conduct that disentitles him to the relief he seeks." Id. The Supreme Court has noted that the restrictions on successive petitions set forth in § 2244(a) "constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'" Felker v. Turpin, 518 U.S. 651, 664 (1996).

On October 17, 2011, Petitioner filed a Motion for Credits [sic] Time Served in this Court,[5] requesting that the Court award him credit towards his federal sentence from May 22, 1995 when he was taken into federal custody on a writ of habeas corpus *ad prosequendum*, for the adjudication of the federal charges, until May 22, 1996, when he was sentenced on those charges. See Case No. 2:95cr8, ECF No. 95. United States District Judge John P. Bailey denied Petitioner's motion on October 27, 2011. Id. at ECF No. 97. Specifically, Judge Bailey found that Petitioner's sentence *was* properly calculated; he was not entitled to credit towards his

---

[5] The motion, filed in Petitioner's criminal case, because it attacked the manner in which his sentence was being executed, could have been construed as a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 and docketed as such. However, for whatever reason, it was not, and was ruled on as filed.

federal sentence for the time spent in State custody from May 22, 1995 until May 22, 1996, because that time had already been credited to his State sentence; that Petitioner's federal sentence began on August 18, 1997, with no credit for time served, when he was paroled from state custody and was received in federal custody to begin his federal sentence; and that his motion had no merit. Id. at * 2 - 3.

The claim that Petitioner raises in the instant petition is identical to the claim made in the Motion for Credits [sic] Time, already denied by this Court in October, 2011. Petitioner cannot benefit from another "bite at the apple" simply because several years have passed since the denial of his Motion for Credits [sic] Time Served and the filing of his instant petition. Accordingly, the undersigned recommends that Petitioner's claim be denied and dismissed with prejudice as successive and as an abuse of the writ.

## B. Disciplinary Hearing and Good Time Credits

Petitioner contends that on January 19, 2014, while incarcerated at FCI II Victorville, he was denied due process at an institutional disciplinary hearing, and ended up losing 14 days of good conduct time. Specifically, he alleges that he was directed to leave the SHU and return to general population, where L.J., a gang member he had previously testified against was housed. He contends that he had a separation order from that inmate; they were not to be housed together; and if he had followed the order, his life would have been jeopardized. ECF No. 1 at 5. He contends that the order was derogatory and some facts . . . were not considered by the DHO [Disciplinary Hearing Officer]."[6] Id.

Respondent argues that Petitioner received all due process at his Disciplinary Hearing and there is some evidence to find that he committed the prohibited act. In response, Petitioner reiterated his arguments.

---

[6] Nowhere does Petitioner expand on or explain this comment.

9

The Supreme Court has identified due process requirements for inmate disciplinary actions: (1) written notice of the charges must be given to the inmate at least twenty-four hours before his appearance in front of the prison disciplinary board; (2) prison disciplinary officers must make a written statement describing the evidence relied upon and supply reasons for any disciplinary actions; (3) the inmate must be allowed to call witnesses and present evidence at the disciplinary hearing unless allowing this would be unduly hazardous to institutional safety or correctional goals; (4) if the inmate is illiterate or the hearing involves a complex matter, the inmate must be granted the opportunity to have a non-attorney representative assist him throughout the disciplinary process; (5) the decision-maker must be impartial. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 564-571 (1974).

In the instant case, Incident report #2539589 was filed on January 19, 2014. ECF No. 15-2 at 5 and 12. The Reporting Officer documented that "I told inmate Baxter . . . that he was returning to general population . . . Baxter state he was not going back to the compound. I gave . . . Baxter a direct order to prepare for returning back to general population and he again refused." ECF No. 15-2 at 5. Petitioner refused to comment on the incident to the Reporting Officer. <u>Id.</u> The Unit Disciplinary Committee (UDC) recommended that the incident be referred to the Disciplinary Hearing Officer (DHO), and that if petitioner were found guilty, he lose commissary, "PNN," and get "D.S.," (presumably disciplinary segregation). <u>Id.</u> Petitioner received a copy of his Inmate Rights at Discipline Hearing on January 22, 2014. <u>Id.</u> at 8. He also received a Notice of Discipline Hearing before a DHO on January 22, 2014. <u>Id.</u> at 10. At the January 30, 2014 disciplinary hearing, Petitioner waived his right to a staff representative; did not call any witnesses; had no documentary evidence to submit; and admitted the charge, stating "I'm not going out [of the SHU]." <u>Id.</u> at 12 - 13. Accordingly, the DHO found Petitioner

10

committed the prohibited act of Offense Code 306, Refusing to Accept Any Work or Program Assignment.[7] Id. The DHO disallowed 14 days good conduct time and impounded his personal property for 14 days. Id. at 13. Petitioner was advised of his appeal rights and received a copy of the report on February 5, 2014. Id. at 14. Petitioner contends that he appealed but the "Centeral [sic] office denied the appeal with addressing the issue." ECF No. 1 at 5.

Petitioner does not deny refusing to obey the order, but contends his life would have been endangered if he had complied. ECF No. 1 at 5.

In response, the Respondent argues that Petitioner received all the due process required by the United States Supreme Court in Wolff v. McDonnell, 418 U.S. 359 (1974). Further, the respondent argues that the evidence relied on by the DHO was sufficient for a finding of guilt in petitioner's case. ECF No. 15 at 10. Moreover, Respondent asserts that prior to the Incident Report being written, the Special Investigative Service ("SIS") did a threat assessment, to decide whether Petitioner needed to stay in the SHU for safety reasons. The conclusion was that there was no credible information to support Petitioner's request for protective custody, and any threats were unverified. ECF No. 15-2, ¶ 8 at 3.

In his reply to Respondent's dispositive motion, Petitioner reiterates his arguments.

"[T]he requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary board to revoke good time credits." Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 455 (1985). The standard is satisfied if there is some evidence supporting the conclusion reached by the disciplinary board. Id.

---

[7] Although the Petitioner had originally been charged with Code 307, Refusing to Obey an Order, at the Disciplinary Hearing, with Petitioner's consent, the Code charge was amended to Code 306 – Refusing to Accept any Work or Program Assignment, "to [better] support the description of the incident. The inmate had no objection to the changing of the charge . . . understood his due process rights, and was ready to proceed with the DHO Hearing." ECF No. 15-2, § V at 13.

In Hill, a prison disciplinary board determined that three inmates violated prison rules by assaulting another inmate. The prison disciplinary board's conclusion was supported by little evidence: a "guard heard some commotion and, upon investigating, discovered an inmate who evidently had just been assaulted. The guard saw three other inmates fleeing together down an enclosed walkway. No other inmates were in the area." Hill, 472 U.S. at 456. Despite little evidence supporting the conclusion, the Supreme Court held that the evidence was sufficient because "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Hill, 472 U.S. at 457.

Here, as noted *supra,* petitioner admitted to the DHO that he had committed the violation and reiterated his refusal to return to general population. In arriving at his decision, the DHO explained that he relied upon (1) the Reporting Officer's statement in the Incident Report and Investigation that Petitioner twice refused to return to general population when directed to do so; (2) Petitioner's statement at the DHO hearing, where he said "I'm not going out;" (3) Petitioner's refusal to make any statement of defense to the Investigating Lieutenant; and (4) and Petitioner's disciplinary history of refusing an order. Therefore, the DHO relied upon "some evidence" in concluding that the Petitioner violated the prison rule and revoking Petitioner's good conduct time. The violation that Petitioner admitted to, Code 306 – Refusing to Accept any Work or Program Assignment, "threatens the security of the institution and the safety of all others as well as hinders the ability of staff to manage inmates effectively. The disallowance of good conduct time was imposed based on the severity of the offense. The loss of privilege sanctions were

imposed to deter the inmate from engaging in inappropriate behavior in the future." ECF No. 15-2, § VII at 14.

Accordingly, the undersigned finds that the BOP provided the Petitioner with adequate procedural due process pursuant to Wolff. See also McKinnon v. Caraway, 2010 WL 3123264 at **3-4 (procedural due process requirements satisfied where inmate "received advanced written notice of the DHO hearing" and DHO "did not prepare the disciplinary report, investigate the infraction, or testify as a witness").

## C. Treatment of Special Needs Inmates at FCI Hazelton

In addition to his challenge to his prior custody credit and disciplinary action, Petitioner also makes several claims regarding the conditions of his confinement. Specifically, he asserts that "special needs" inmates like himself and other inmates who have acted as "snitches," or are homosexuals or sex offenders, are subjected to "cruel and unusual punishment" at FCI Hazelton. Specifically, he contends that the staff treats them unfairly; threatens and verbally harasses them; limits their access to TV, showers, and recreation; and these inmates are "mostly assigned to one minute job." ECF No. 1-4 at 1. He asserts that he personally is "being forced to the ["special needs"] yard under conditions which are known and will cause me to be assulted [sic] or killed." Id. at 2. Further, he contends that staff routinely permits their food to be contaminated with spit and chemicals. ECF No. 1 at 6. He avers that some staff routinely provide inmates with other inmates' confidential information from their PreSentence Investigation Reports, leading to these inmates having to live in constant fear of bodily harm. He contends that this situation has resulted in "alot [sic] of assults [sic], one suicide, and murders[.]" ECF No. 1-4 at 2. He requests that a "special master" be brought in to oversee the situation and report on it to the Court. Id. at

13

2. Further, he contends that while in the SHU, his access to the courts was impeded because he could not get stamps or copies of his legal documents. Id. at 1.

Respondent argues that petitioner's conditions of confinement claims are not cognizable in a § 2241 habeas action. In response, Petitioner concedes the claims and withdraws them.

The undersigned concurs with Respondent. A section 2241 petition is used to attack the manner in which the sentence is executed. See 28 U.S.C. § 2241. In a 2241 petition, a prisoner may seek relief from his parole, computation of his sentence or disciplinary actions taken against him. "[T]he Supreme Court [has] held that the writ of habeas corpus was the exclusive civil remedy for prisoners seeking release from custody." Glaus v. Anderson, 408 F.3d 382, 386 (7th Cir. 2005). Also worth noting is that at the "heart of habeas corpus" petitions, the petitioner is challenging "the fact or duration of his physical confinement," or "seeking immediate release or a speedier release from active confinement." Preiser v. Rodriguez, 411 U.S. 475, 498 (1973). On the other hand, a Bivens action is used to hold federal officers "individually liable for constitutional violations." Starr v. Baca, 625 F.3d 1202 (9th Cir. 2011). Even more generally, a Bivens action allows individuals to sue a federal actor because he or she violated a right guaranteed by the Constitution or a federal law. See Bivens, 403 U.S. at 392-94. Further, "[a]lthough ' more limited in some respects,' a Bivens action is the federal analog to an action against state or local officials under § 1983." Id. (quoting Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006)); see Preiser, 411 U.S. at 499 ( "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not the fact or length of his custody." ).

Here, Petitioner's claims regarding the conditions of his confinement are not an attack on, nor are they related in any way to, the execution of his sentence. If Petitioner wishes to pursue

these additional claims, he must file a lawsuit governed by Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 399 (1971),[8] and pay the $350.00 filing fee.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's Motion to Dismiss or for Summary Judgment [ECF No. 14] be **GRANTED** and Petitioner's Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED and dismissed with prejudice.**

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendations**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record via electronic means.

---

[8] In Bivens, the Supreme Court created a counterpart to §1983 so that individuals may bring suit against a federal actor for violating a right guaranteed by the Constitution or federal law. Because petitioner is a federal prisoner, he must therefore file a Bivens action as opposed to one under §1983.

15

DATE: JULY 5, 2016

                                            */s Michael John Aloi*
                                            MCHAEL JOHN ALOI
                                            UNITED STATES MAGISTRATE JUDGE